**SO ORDERED.**

**SIGNED this 20 day of November, 2013.**



_____
**A. Thomas Small
United States Bankruptcy Court Judge**

_____

```
          UNITED STATES BANKRUPTCY COURT
          EASTERN DISTRICT OF NORTH CAROLINA
                 GREENVILLE DIVISION
```

IN RE:

SEA HORSE REALTY &                    CASE NO. 11-07223-8-ATS
CONSTRUCTION, INC.,                   CHAPTER 11

    DEBTOR.


IN RE:

RICKARD B. MERCER,                    CASE NO. 09-04088-8-ATS
                                      CHAPTER 11
    DEBTOR.


<u>**ORDER REGARDING MOTION FOR TEMPORARY RESTRAINING ORDER AND**</u>

<u>**FOR INJUNCTIVE RELIEF**</u>

The matter before the court is the motion filed by CitiMortgage, Inc. for a temporary restraining order and injunctive relief requiring the chapter 11 debtor Sea Horse Realty & Construction, Inc. and/or the chapter 11 debtor Rickard B. Mercer to return funds that had been held in trust by the law firm of Oliver Friesen Cheek and that were disbursed to Sea Horse and/or Mercer by the law firm without authorization of the

1

court in violation of this court's order of September 11, 2013. An emergency telephone conference hearing was held on November 15, 2013, and as a result of that hearing the court entered an order on November 15 to maintain the status quo. An expedited hearing was subsequently held in Raleigh, North Carolina on November 19, 2013.

On September 11, 2013, this court entered an order that allowed funds being held in trust by the Oliver firm to be used to pay fees owed to the Oliver firm. The order concluded with this sentence "The balance of the sale proceeds, after payment of the above-referenced compensation and expenses, will remain in the trust account of Oliver Friesen Cheek and any further distributions or payments therefrom are stayed, pending further order of the court." It is not contested that the Oliver firm, without "further order of the court," disbursed the funds that it held in trust, which amounted to approximately $1,400,000, to its client Sea Horse.

The Oliver firm offers a thorough analysis of Rule 8005 and Rule 8017 of the Federal Rules of Bankruptcy Procedure and related case law[1] to justify the disbursement, but its justification is unconvincing.

---

[1] In re Fountain Powerboat Industries, Inc., 2011 WL 5909465 (Bankr. E.D.N.C. July 22, 2011); In re Meade, No. 09-11148-8 (Bankr. E.D.N.C. Mar. 22, 2013).

2

There is a dispute between CitiMortgage and Sea Horse concerning the validity of a deed of trust that is the subject of the adversary proceeding <u>Sea Horse Realty & Construction, Inc., v. CitiMortgage, Inc.</u>, Adv. No. 11-00377.  In that proceeding Bankruptcy Judge J. Rich Leonard granted summary judgment in favor of Sea Horse and CitiMortgage appealed to the district court.  Judge Leonard, at the request of appellant CitiMortgage and pursuant to Rule 8005 of the Federal Rules of Bankruptcy Procedure, entered an order on June 17, 2013, staying the effect of his order pending the outcome of the appeal. District Judge Louise W. Flanagan affirmed Judge Leonard's grant of summary judgment and CitiMortgage filed a timely appeal to the United States Court of Appeals for the Fourth Circuit. CitiMortgage, however, did not request a further stay pursuant to Rule 8017 and according to the Oliver firm the failure to request a stay meant that the firm could disburse the funds it held in trust to Sea Horse.  The Oliver firm contends that the stay pending appeal entered by Judge Leonard terminated when Judge Flanagan affirmed his decision and that the automatic stay pending appeal provided by Bankruptcy Rule 8017 ended 14 days later when no new stay was requested by CitiMortgage. Furthermore, the Oliver firm maintains that this court's order of September 11, 2013, did not preclude it from disbursing the funds held by it in trust because when CitiMortgage did not

3

request a new stay 14 days after Judge Flanagan's order this court had no jurisdiction to enjoin the distribution of funds and this court's order of September 11, like Judge Leonard's order of June 17, 2013, became ineffective.

The problem with that argument is that this court's order of September 11 is not like Judge Leonard's order of June 17. This court's order that unambiguously provided that the funds held in trust should not be disbursed "pending further order of the court" was not entered pursuant to Bankruptcy Rule 8005 and was not conditioned on the outcome of the appeal to the district court. The order of September 11 was entered in the chapter 11 case, not the adversary proceeding, and clearly the court which has, pursuant to 28 U.S.C. § 1334(e)(1), exclusive jurisdiction "of all the property, wherever located, of the debtor as of the commencement of the case, and of property of the estate" had the authority to order that the funds be held in trust pending further order of the court.[2]

The trust fund which was needed because of the dispute between CitiMortgage and Sea Horse over the deed of trust was created in the chapter 11 case by a consent order entered by

---

[2] An order such as the court's order of September 11, 2013, could also have been entered pursuant to Bankruptcy Rule 8005 which provides that the bankruptcy judge may "make any other appropriate order during the pendency of an appeal on such terms as will protect the rights of all parties in interest." An order that required that sales proceeds be held in trust "pending further order of the court" would not terminate until the court entered a "further order."

4

Judge Leonard on March 5, 2012.  The order provided for the private sale of property of Sea Horse and for the proceeds of the sale to be held in trust "until there is a final resolution of the lawsuit to determine the validity of a secured lien which CitiMortgage asserts it has on the Property."  That order on its own should have been sufficient to preclude the Oliver firm from disbursing the funds it held in trust.  CitiMortgage may not have asked for a stay pending appeal to the court of appeals, but it did file a timely appeal and consequently there is no "final resolution" of the lawsuit and the funds pursuant to the terms of the order of March 5, 2012, should not have been released.  This court's order of September 11, 2013, is consistent with the consent order of March 5, 2012, and could not have been clearer.  The trust funds were not to have been disbursed without further order of this court.

CitiMortgage maintains that the motive for releasing the funds was to gain an advantage against CitiMortgage in the chapter 11 case involving Mr. Mercer, Sea Horse's owner, but at this point motivation is not an issue.  The important thing now is that this court's clear and unambiguous order was violated without justification, and that the funds should be returned to the trust account.

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED** that CitiMortgage's Motion for Injunctive Relief is hereby **GRANTED**. Sea Horse and Mercer shall immediately return all proceeds and funds to the Oliver firm trust account that were held in the Oliver firm trust account and distributed to Sea Horse and/or Mercer. The return of the proceeds is to be completed by November 25, 2013. This Court's status quo order entered on November 15, 2013, remains in full force and effect until such time as the Oliver firm, Sea Horse, and Mercer are in full compliance with this Order. In addition, Sea Horse and Mercer shall cause all third-persons and/or entities that have possession or control over the proceeds or funds to return the proceeds to the Oliver firm trust account. The Oliver firm shall notify the Court and counsel for CitiMortgage when the funds have been returned and the amount returned. The Court shall designate a subsequent transfer of the proceeds from the Oliver firm's trust account to an uninterested third-party trust account, the costs of which are to be borne by the Oliver firm.

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that Sea Horse and Mercer shall make an accurate accounting of all proceeds and funds originally distributed but that have not been returned to the Oliver trust account. The accounting shall be provided to the Court and to counsel for CitiMortgage on or before November

6

25, 2013. The accounting shall include, but not be limited to, a detailed description of what real and personal property was purchased, when it was purchased, from whom it was purchased, and the price it was paid. The accounting shall include copies of all documentation and receipts related to the purchase of any real or personal property. Sea Horse and Mercer are required to preserve and not waste any real, personal, or other property that has been purchased with the proceeds. Sea Horse and Mercer shall further disclose any mortgages or other encumbrances on any property that was purchased, in whole or in part, by the proceeds. The Court reserves the right to enter further relief upon receipt and review of the above described accounting.

**END OF DOCUMENT**